FILED
2007 Sep-11  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ALEXANDER H. ROACH, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 05-S-1276-NE** |
| | ) | |
| **PETE GEREN, Secretary of the** | ) | |
| **United States Army,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this lawsuit, Alexander H. Roach, Jr., alleges that the United States Army discriminated against him on the basis of his race, African American ("black"), and retaliated against him for reporting racial discrimination — two actions which, if proved, could entitle him to relief under Title VII of the Civil Rights Act of 1964, *codified as amended at* 42 U.S.C. § 2000e *et seq.*[2]   The sole defendant, Secretary of the Army Pete Geren, has moved for partial dismissal based upon plaintiff's failure to present certain allegations now offered in support of those claims to the administrative authorities within the time period specified by 29 C.F.R. §

---

[1] Although only his predecessor is named in the complaint, Secretary Geren was automatically substituted as the proper defendant to this official capacity lawsuit upon taking office on March 7, 2007. *See* Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency . . . ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.").

[2] *See* doc. no. 1 (Plaintiff's Complaint), ¶ 1.

1614.105.[3]  *See Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006) (noting that failure to exhaust mandatory administrative remedies deprives courts of subject matter jurisdiction under Title VII); Fed. R. Civ. P. 12(b)(1) (permitting assertion of lack of subject matter jurisdiction defense by motion).  Alternatively, defendant seeks summary judgment on all claims, regardless of whether the supporting allegations were presented administratively.[4]  *See* Fed. R. Civ. P. 56(b), (c).

In responding to the motion, plaintiff conceded that defendant's administrative exhaustion arguments could not be gainsaid.[5]  Thus, to the extent defendant moves to dismiss certain constructions of plaintiff's claims for lack of subject matter jurisdiction, the motion will be granted without further discussion.

Plaintiff also has minimized his resistance to summary judgment, choosing to buttress both his race discrimination and retaliation claims by reference to only one of the several allegedly adverse employment actions recited in his complaint: *i.e.*, the Army's failure to promote him to a temporary position as Electronics Engineer Team Leader.[6]  As discussed below, however, there is insufficient evidence for a jury to

---

[3] *See* doc. no. 25 (Defendant's Motion to Dismiss or for Summary Judgment).

[4] *See id*.

[5] Doc. no. 28 (Plaintiff's Motion in Partial Opposition to Defendant's Motion to Dismiss and for Summary Judgment), pp. 2-3.  Specifically, plaintiff concedes that the alleged adverse employment actions described or alluded to in Paragraphs 14-17 of his complaint must be dismissed for failure to exhaust administrative remedies.  *See id*.  *See also* doc. no. 1, ¶¶ 14-17.

[6] Doc. no. 28, pp. 2-3 (conceding that "Mr. Roach's counsel cannot present an argument consistent with Fed. R. Civ. P. 11 [in support of the remaining alleged adverse actions]").

conclude that plaintiff's nonselection for that position was attributable to racial animus or a retaliatory motive. Accordingly, defendant's motion to dismiss and for summary judgment is due to be granted in full.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "*shall be* rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis supplied). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is

only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921).  *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF RELEVANT FACTS

In many ways, this discrimination case revolves around a Caucasian man named David Lawson.  At all relevant times, Lawson was Chief of the Defense Advanced Research Projects Agency ("DARPA") Programs Office, a unit situated within the Weapons Sciences Directorate of the United States Army Aviation and Missile Command, located on Redstone Arsenal, contiguous to Huntsville, Alabama.[7]  In 2003, Lawson was charged with selecting an individual to fill a temporary (*i.e.*,

---

[7] Doc. no. 26 (Defendant's Brief in Support of Dismissal and Summary Judgment), Statement of Undisputed Facts, ¶¶ 1, 2.

180-day) position as Electronics Engineer Team Leader for DARPA's Technology Development Group.[8]   The Technology Development Group is one of the two branches of the DARPA Programs Office.[9]  "The Technology Development Group manages high dollar projects and is more technically involved in directing the course and scope of research."[10]   The mission of the other division, known as the Small Business Group, "is to manage a high volume of smaller dollar projects[,] and Small Business Group members do not get as technically involved as their Technology Group counterparts."[11]

On April 9, 2003, Lawson utilized an accepted Army procedure to send out an e-mail "canvassing" announcement, inviting interested individuals to apply for the Team Leader position.[12]  Among the seventeen respondents were Barbara Robertson, a white female, and the plaintiff in this case, Alexander Roach, Jr., who is black.[13]

Robertson holds a bachelor's degree in engineering from the University of Tennessee at Chattanooga, a master's degree in electrical engineering from the

[8] *See*, *e.g.*, *id*. at ¶¶ 55, 60; doc. no. 28, Statement of Undisputed Facts, ¶ 10. ***Nota bene:*** the statement of undisputed facts in doc. no. 28 has two allegations labeled "10"; the foregoing citation refers to the first appearance of that numbered allegation.  To distinguish these numbered allegations in the remaining footnotes, the first allegations labeled "10" and "11" will appear as "10-A" and "11-A," respectively, while the second appearances will be cited as "10-B" and "11-B," respectively.

[9] Doc. no. 26, Statement of Undisputed Facts, ¶ 4.

[10] *Id*. at ¶ 5.

[11] *Id*.

[12] *Id*. at ¶¶ 33, 34, 55.

[13] *Id*. at ¶¶ 1, 14, 56; doc. no. 28, Statement of Undisputed Facts, ¶¶ 10-A, 11-B.

-5-

University of Alabama in Huntsville, and, at the time of her application, she had completed twenty-seven hours of study in pursuit of a doctoral degree at the University of Alabama in Huntsville.[14]  Robertson also possessed more than eighteen years of engineering work experience, fourteen of which were spent in DARPA's Technology Development Group.[15]    During her time with the Technology Development Group (which she joined in 1989), Robertson "effectively managed several large DARPA research efforts, consistently providing reasoned advice to management on technical and managerial aspects of DARPA programs."[16]  Moreover, Robertson served as Team Leader of the Technology Development Group in 1995, so she had experience in the exact position she sought in 2003.[17]

After studying at Alabama A & M University and the University of Alabama in Huntsville, plaintiff also earned a bachelor's degree in engineering.[18]   Like Robertson, plaintiff also studied at the graduate level; but unlike her, he did not earn an advanced degree.[19]  Nor does plaintiff have any experience as Team Leader of the Technology Development Group.  Since he joined the DARPA Programs Office in

---

[14] Doc. no. 28, Statement of Undisputed Facts, ¶ 11-A.

[15] *Id*. at ¶ 10-B.

[16] Doc. no. 26, Statement of Undisputed Facts, ¶ 62.

[17] *Id*. at ¶ 61.

[18] Doc. no. 28, Statement of Undisputed Facts, ¶ 11-A.

[19] *Id*.

1997, he has served within the Small Business Group.[20]  Currently, plaintiff is

employed as "Project Manager / Technical Monitor" in the Small Business Group.[21]

Although plaintiff had, at the time of his application, substantially more

general engineering experience than Robertson — thirty years, as opposed to her

eighteen[22] — only eight of those years were spent with the DARPA Programs Office

and, evidently, none were with the Technology Development Group.[23]

Comparing these two candidates, as well as the other fifteen applicants,

Lawson allegedly decided that Robertson "was the most qualified person for the

[temporary] position,"[24] and he selected to her fill the vacancy.[25]  Specifically,

"Lawson testified that he selected . . . Robertson based upon her depth of experience

in managing DARPA sponsored research in the Technology Development Group (the

group in which the vacancy existed) and her demonstrated leadership abilities."[26]  In

Lawson's own words:

> Robertson has extensive experience within the Technology
> Development Group dating back to 1989.  She has effectively managed
> several large DARPA research efforts, and has consistently provided

---

[20] Doc. no. 26, Statement of Undisputed Facts, ¶ 61.

[21] *Id*. at ¶¶ 1, 61.  *See also* doc. no. 27 (Defendant's Evidentiary Submission), Ex. 3.

[22] *See* doc. no. 28, Statement of Undisputed Facts, ¶ 10-B.

[23] *Id*.

[24] *Id*. at ¶ 11; doc. no. 26, Statement of Undisputed Facts, ¶ 59.

[25] Doc. no. 26, Statement of Undisputed Facts, ¶¶ 14, 57.

[26] *Id*. at ¶ 60.

reasoned advice to management on both technical and managerial aspects of operation of DARPA programs.  She demonstrated leadership of the Technology Development Group when she was the group team leader for a period in 1995.  She has a Bachelor[']s of Science in Engineering Degree, Magna Cum Laude, a Master[']s Degree in Electrical Engineering, and is a Doctoral Candidate in Electrical Engineering.  She was the best qualified individual out of the seventeen applicants.[27]

Plaintiff is not convinced.  He points to his extensive engineering background with other employers, noting that he had

approximately twelve more years of engineering experience than . . . Robertson at the time they applied for the temporary position of Electronics Engineer Team Leader.  Furthermore, [plaintiff's] engineering experience is greater than . . . Robertson's in both breadth and depth when one considers [his] extensive dealings with private corporations such as GE, Xerox, and Ford Motor Company, which experience . . . Robertson substantially lacked.[28]

Given what he attempts to characterize as this striking experience disparity, plaintiff asserts that the real reason he was not selected was racial discrimination.

Additionally, plaintiff believes that his nonselection was an intentional act of retaliation by Lawson.  On March 3, 2003, plaintiff filed an informal charge of discrimination with the equal employment authorities concerning an unrelated incident; in the charge, Lawson was named as the discriminating official.[29]  Plaintiff,

---

[27] Doc. no. 27, Ex. 13, p. 468.

[28] Doc. no. 28, p. 12 (emphasis deleted).

[29] *Id*. at Statement of Undisputed Facts, ¶ 5.

however, has no evidence of retaliation — save what he apparently considers suspicious timing.  That is, just over one month elapsed between plaintiff's initiation of an informal complaint on March 3, 2003, and his transmission of an application to Lawson by e-mail on April 17, 2003.[30]  Robertson was eventually selected to fill the temporary Team Leader position on November 2, 2003,[31] and plaintiff was informed of the selection on December 11, 2003.[32]

## III. DISCUSSION OF LAW

### A.  Plaintiff's Failure to Promote Claim

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race*, *color*, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis supplied).[33]

---

[30] *Id*. at ¶ 7.

[31] Doc. no. 26, Statement of Undisputed Facts, ¶¶ 14, 57.

[32] *Id*. at ¶ 58; doc. no. 28, Statement of Undisputed Facts, ¶ 12.

[33] The full text of this keystone provision of the Civil Rights Act of 1964, as amended, reads as follows:

It shall be an unlawful employment practice for an employer—
    (1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
    (2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

The broad anti-discrimination principle set forth by this language encompasses situations in which an employer intentionally fails to promote an individual because of that individual's race. *See, e.g.*, *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005). Of course, actually proving that an employer relied upon race in rejecting a request to be promoted — *i.e.*, "proving that intentional discrimination motivated the employer," *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) — is rarely a straightforward undertaking.

> Frequently, acts of discrimination may be hidden or subtle; an employer who intentionally discriminates is unlikely to leave a written record of his illegal motive, and may not tell anyone about it. . . . Because of these realities, plaintiffs are often obliged to build their cases entirely around circumstantial evidence. The unique proof problems that accompany discrimination cases are the genesis of the unique solutions that the Supreme Court has devised for those cases in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973),] and its progeny.

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997).

Thus, where (as here) there is no direct evidence of discrimination, the plaintiff bears the initial burden of establishing a *prima facie* case of an employer's intent to discriminate on the basis of race. *E.g.*, *Vessels*, 408 F.3d at 767 (citing *McDonnell Douglas*, 411 U.S. at 802). In the context of a failure to promote claim, the plaintiff must establish the following elements in order to make out a *prima facie* case: (1) he is a member of a protected class; (2) he applied for, and was qualified to fill, a

---

42 U.S.C. § 2000e-2(a).

position for which the defendant was accepting applications; (3) despite his qualifications, he was rejected for the position; and (4) after his rejection, the employer *either* kept the position open, *or* filled it with a person outside plaintiff's protected class. *See*, *e.g.*, *Vessels*, 408 F.3d at 768; *Walker v. Mortham*, 158 F.3d 1177, 1179 n.2, 1185-93 (11th Cir. 1998) (explaining that a plaintiff need not introduce evidence of the relative qualifications of the person promoted instead of plaintiff as part of his *prima facie* case for failure to promote). "Establishment of the prima facie case in effect creates a *presumption* that the employer unlawfully discriminated against the employee." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1973) (emphasis supplied).

"The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254). The employer's burden at the second stage of analysis "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products*, *Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered

reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55 (citation and footnote omitted)). Indeed, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257.

If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *id.*, then the "rebuttable presumption" of discrimination created by the demonstration of a *prima facie* case[34] is refuted, "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10.

In this final step of the analytical process, the burden shifts back to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely a pretext for intentional discrimination.

---

[34]*See Burdine*, 450 U.S. at 254 n.7 (explaining that, in the *McDonnell Douglas* context, the phrase "*prima facie* case" is used to "denote the establishment of a legally mandatory, rebuttable presumption [of discrimination]").

*Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).  *See also Wilson*, 376 F.3d at 1088 ("If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling with that reason is not sufficient.") (internal citation omitted).  The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Combs*, 106 F.3d at 1538 (internal quotations and citation omitted).

If a plaintiff demonstrates pretext, he "is entitled to survive summary judgment," *id.* at 1529, *except* in the rare case where, notwithstanding the evidence of pretext, "no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 134-35.  *See also Brooks v. Jefferson County Commission*, 446 F.3d 1160, 1163 (11th Cir. 2006).  In any case, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

In the present case, defendant does not contest plaintiff's establishment of a *prima facie* case of racial discrimination;[35] nor does plaintiff quibble with the

---

[35] *See*, *e.g.*, doc. no. 26, p. 28; doc. no. 28, p. 10.

legitimacy of defendant's asserted nondiscriminatory rationale.[36]  *See generally Steger v. General Electric Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003) (approving such reasons as "seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination of such criteria") (internal quotations and citation omitted). Accordingly, the court proceeds directly to an analysis of pretext.

As mentioned above, plaintiff's entire argument regarding pretext hinges on the allegation that he was more qualified for the position of temporary Team Leader than the individual who ultimately received the promotion.[37]  Of course, the Eleventh Circuit has explained that, "[i]n the context of a promotion: 'a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [applicant] who received the promotion he coveted.'"  *Brooks*, 446 F.3d at 1163 (quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000)). Instead, "[a] plaintiff must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'"  *Id.* (quoting *Cooper v. Southern Co.*, 390 F3d

---

[36] *See* doc. no. 28, pp. 10-12.

[37] *See id.*

695, 732 (11th Cir. 2004)).  *See also Ash v. Tyson Foods*, 546 U.S. 454, 457 (2006).

Plaintiff has not made this showing.  Lawson stated that he selected Robertson based on her "depth of experience in managing DARPA sponsored research in the Technology Development Group and her demonstrated leadership abilities."[38] Plaintiff's only response is that Lawson should have placed more weight on his "extensive dealings with private corporations."[39]  But Lawson made clear that he was not interested in a candidate who had exceptional private sector experience.  Thus, plaintiff has failed to "meet [Lawson's reason] head on and rebut it."  *Wilson*, 376 F.3d at 1088 (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*)).

In any event, "[the court's] inquiry at the third stage of the *McDonnell Douglas* analysis of a promotion discrimination claim is not concerned with [plaintiff's] belief that [he] was more qualified *or* whether [the court] could conclude that [he] was better qualified than [Robertson]."  *Brooks*, 446 F.3d at 1163-64.  *See also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (internal citation omitted).  Clearly, Robertson possessed relevant experience that

---

[38] Doc. no. 27, Ex. 13, p. 467.

[39] Doc. no. 28, p. 12.

plaintiff lacked:  she had worked for many years in the Technology Development Group, and even served as Team Leader in 1995.[40]   Whatever his collateral engineering experience, it appears plaintiff had no background working as Team Leader for the Technology Development Group.[41]  In short, there is no evidence in the record to discredit Lawson's stated reasons for selecting Robertson over plaintiff. *Cf. Brooks*, 446 F.3d at 1164.  Accordingly, defendant is due summary judgment on plaintiff's failure to promote claim.

## B.     Plaintiff's Retaliation Claim

Plaintiff also alleges that he was a victim of retaliation for pursuing administrative charges of discrimination.  "Retaliation is a separate violation of Title VII."  *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).  In the absence of direct evidence of retaliatory motive, the *McDonnell Douglas* burden shifting analysis also applies to retaliation claims under Title VII.  *See Hurlbert v. St. Mary's Health Care System*, *Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).  Since that analysis has already been explicated, it is only necessary to recite the *prima facie* elements of a retaliation claim.

A *prima facie* case of retaliation requires proof of three elements:  (1) the

---

[40] Doc. no. 26, Statement of Undisputed Facts, ¶¶ 61-62.

[41] *See* doc. no. 28, Statement of Undisputed Facts, ¶ 10-B.

plaintiff engaged in statutorily protected activity — *i.e.*, "he opposed any practice made an unlawful employment practice by [Title VII], or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]," 42 U.S.C. § 2000e-3(a); (2) he thereafter suffered an adverse employment action; and (3) there is a causal linkage between the plaintiff's protected activity and the employer's adverse employment action. *E.g.*, *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001); *Gupta*, 212 F.3d at 587; *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

Defendant does not protest plaintiff's establishment of the first two elements of the retaliation cause of action, but contends that there is insufficient evidence of causation to proceed to the second prong of the *McDonnell Douglas* inquiry.[42]  "To establish a causal connection, a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Systems Services, Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (internal citation omitted).  *See also*, *e.g.*, *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (same).  In the absence of any more probative evidence, many plaintiffs resort to suggestive timing to show causation.  *See*, *e.g.*, *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("The general rule is that close temporal proximity

---

[42] Doc. no. 26, p. 28.

between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection"). *See also Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (same). But the Supreme Court has indicated that to be sufficient standing alone, the temporal gap must be "'very close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).[43]

In the present case, plaintiff's informal charge of discrimination was filed on March 3, 2003.[44] Robertson was not promoted to the temporary Team Leader position until November 2, 2003, approximately eight months later.[45] Without a doubt, eight months between notice of protected activity and adverse action is too protracted a time period to permit a reasonable inference of causation. *See*, *e.g.*,

---

[43] In full text, the Supreme Court's statement in *Breeden* concerning temporal proximity is as follows:

> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (C.A.10 2001). *See e.g., Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (C.A.7 1992) (4-month period insufficient). Action taken (as here) 20 months later suggests, by itself, no causality at all.

*Breeden*, 532 U.S. at 273-74.

[44] Doc. no. 28, Statement of Undisputed Facts, ¶ 5.

[45] Doc. no. 26, Statement of Undisputed Facts, ¶¶ 14, 57.

*Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We are not persuaded that *three months* . . . is sufficiently proximate to show causation.") (emphasis supplied).

At one point, plaintiff implies that the court should judge proximity by measuring the gap between notice of protected activity and Lawson's *solicitation of applications* for the temporary Team Leader position.[46]  This argument, which plaintiff does not attempt to support with citation to authority — *cf. Flanigan's Enterprises*, *Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding an argument is waived if the proponent "fail[s] to elaborate or provide any citation of authority in support [of the argument]") — makes little sense.  The cases uniformly hold that the relevant events are notice of protected activity, and a subsequent adverse action.  *See*, *e.g.*, *Breeden*, 532 U.S. at 273 (discussing the inference of causation that arises from "mere temporal proximity between an *employer's knowledge of protected activity* and *an adverse employment action*") (emphasis supplied); *Brungart*, 231 F.3d at 799 (examining the time span "between the employee's protected conduct and *the adverse employment action*"); *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (requiring a plaintiff to provide "sufficient evidence that the decision-maker *became aware* of the protected conduct, and that there was close temporal proximity between *this awareness* and the *adverse employment action*")

---

[46] *See* doc. no. 28, p. 14.

(emphasis supplied).

Accordingly, the court holds that plaintiff has failed to produce evidence suggestive of a causative connection, and, as a result, cannot make out a *prima facie* case of retaliation. Even if the causation element were met, however, the court would grant defendant's motion for summary judgment as to the retaliation claim because, as already noted, plaintiff cannot establish pretext.[47]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, defendant's motion to dismiss and for summary judgment is due to be, and the same is hereby, GRANTED in full. All of the claims in plaintiff's complaint are DISMISSED with prejudice. Costs are taxed to plaintiff. The Clerk is directed to close this file.

DONE and ORDERED this 11th day of September, 2007.

United States District Judge

---

[47] *See id.* at p. 15 (arguing that "[t]he same facts that support [plaintiff's] discrimination claim regarding disparity in qualifications also support his retaliation claim.").